## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND EDWARD GILL, | * | |
| Petitioner, | * | Civil Action No. RDB-18-1303 |
| v. | * | Criminal Action No. RDB-13-0577 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

On December 11, 2014, following a four-day jury trial, *pro se* Petitioner Raymond Gill ("Petitioner" or "Gill") was convicted of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f), and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). (Verdict Form, ECF No. 56.) On March 13, 2015, this Court[1] sentenced Gill to an overall term of forty years of imprisonment, to be followed by five years of supervised release. (Judgment & Commitment Order ("J&C"), ECF No. 70.) Subsequently, the United States Court of Appeals for the Fourth Circuit affirmed Gill's conviction and sentence. *United States v. Gill*, 667 F. App'x 789 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 599 (2016).

Gill has filed numerous motions seeking miscellaneous forms of post-conviction relief. Presently pending is a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C.

---

[1]     This case was initially assigned to Judge Catherine C. Blake.  In March 2014, it was reassigned to Judge George Levi Russell, III, who presided at the April 22, 2014 pretrial motion hearing.  The case was reassigned to the undersigned Judge Richard D. Bennett, the presiding judge at Petitioner's trial and at sentencing, on October 31, 2014.

§ 2255 ("§ 2255 Motion," ECF No. 129),[2] along with fourteen amended motions (ECF Nos. 131, 137, 138, 143, 145, 147, 148, 151, 153, 154, 157, 165, 166, and 170).  Also pending are Petitioner's Rule 35(a) Motion (ECF No. 72) and a Motion to Amend the Rule 35(a) Motion (ECF No. 95); three Motions for Bail Hearing (ECF Nos. 118, 142, and 178); a Motion for Relief for False Imprisonment (ECF No. 147); a Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156); a Writ of Mandamus (ECF No. 164); a Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208); a Motion to Appoint Counsel (ECF No. 213); two Motions to Modify Sentence (ECF Nos. 215, 222); and a Motion for Compassionate Release (ECF No. 216).

The Government opposes Petitioner's § 2255 Motion and related amended filings and filed a response in support of its position on September 4, 2018.  (ECF No. 179.)  The Government has not filed a response to Petitioner's supplemental pending motions.

The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 129), along with the fourteen amended filings (ECF Nos. 131, 137, 138, 143, 145, 147, 148, 151, 153, 154, 157, 165, 166, and 170) are DENIED; the Rule 35(a) Motion (ECF No. 72) and Motion to Amend the Rule 35(a) Motion (ECF No. 95) are DENIED; three Motions for Bail Hearing (ECF Nos. 118, 142, and 178) are DENIED; Motion for Relief for False Imprisonment (ECF No. 147) is DENIED; Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156)

---

[2]    This Court considers ECF No. 129 to be the original § 2255 Motion and ECF No. 141 to be a duplicate of the original motion.

is DENIED; Writ of Mandamus (ECF No. 164) is DENIED; Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208) is DENIED; Motion to Appoint Counsel (ECF No. 213) is DENIED; two Motions to Modify Sentence (ECF Nos. 215, 222) are DENIED; and Motion for Compassionate Release (ECF Nos. 216) is DENIED.

## BACKGROUND

### I.      The Offense of Conviction.

On August 27, 2013, a man later identified as Gill used a handgun to rob the Wells Fargo Bank located at 860 N. Rolling Road in Catonsville, Maryland.  After a four-day trial, a jury found Gill guilty of one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f), and one count of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), in relation to the August 27, 2013 robbery.  (Verdict, ECF No. 56.)

During the trial, the Government called eleven witnesses and presented several exhibits.  (Government Witness List, ECF No. 51; Ex. List, ECF No. 52.)  A summary of the evidence adduced at trial is set forth below.

On August 27, 2013, at approximately 12:26 p.m., one male entered the Wells Fargo Bank located at 860 N. Rolling Road in Catonsville, Maryland, wearing a yellow and tan plaid shirt and green hat.  (Dec. 8, 2014 Trial Tr. 23:20–25:22, ECF No. 96.)  After entering, he waited for the commercial teller window to become available.  (*Id.* at 24:8-9.)  When the teller working the commercial window finished with a customer, the man approached the window, brandished a revolver, pointed it at the teller, and stated, "this is an armed robbery."  (*Id.* at 24:10-16.)  The man then demanded the teller provide all of the twenty-dollar bills and one-hundred-dollar bills.  (*Id.*)

The teller described the gun as an old, tarnished, metal revolver, which she believed to be real.  (*Id.* at 63:22–70:15.)  Fearing for her life, the teller complied with the robber's demands and handed over all of the currency from her top cash drawer.  (*Id.* at 62:7–63:4.)  After the top drawer was emptied, she paused for a moment hoping the robber would be satisfied and leave the bank.  (*Id.* at 62:10-15.)  The robber insisted, "[m]ore, keep going," and the teller provided additional currency from the bottom drawer.  (*Id.* at 63:2-18.)  In total, the teller provided the robber $22,004 in U.S. currency.  (*Id.* at 48:18.)  Fearing for her life, she did not include any of the various technology employed by the bank to track stolen money.  (*Id.* at 70:16-25.)  During the bank teller's testimony at trial, she identified Gill as the bank robber.  (*Id.* at 77:13-21.)

After stealing the money, the suspect quickly left the bank.  (*Id.* at 71:10-11.)  The branch manager followed behind him to lock the bank's doors, and as she locked the doors, she watched the suspect remove his shirt as he walked through the bank's parking lot.  (*Id.* at 43:9–45:22.)  Subsequently, Baltimore County Police Department Detectives recovered a yellow and tan plaid shirt wrapped in a ball and lying in a puddle of water in the parking lot where the branch manager had observed the suspect removing his shirt.  (Dec. 9, 2014 Trial Tr. 7:16-22, ECF No. 92.)  Inside the shirt, law enforcement found a green hat and white mask.  (*Id.* at 12:21–13:4.)  A forensic biologist from the Baltimore County Police Department's forensic laboratory testified that the items were tested for the presence of DNA, and Gill's DNA was found on the mask and hat.  (Dec. 10, 2014 Trial Tr. 17:4-8, 20:1-5, ECF No. 97.)  No DNA was found on the plaid shirt.  (*Id.* at 25:10-17.)

Investigators also obtained surveillance video from the bank, which captured the

suspect at various times during the incident, including as he entered and exited the bank, as he waited for the commercial teller, as well as during the actual robbery. (Dec. 8, 2014 Trial Tr. 72:2–75:18, ECF No. 96.) The video captured full view of the suspect's face and clothing, which was identical to the plaid shirt and green hat found in the parking lot. (*Id.*)

Following the incident, Supervisory Special Agent Patrick Dugan of the Federal Bureau of Investigation ("FBI") observed the surveillance images from the robbery and suggested that law enforcement attempt to locate Gill. (Dec. 9, 2014 Trial Tr. 90:14–91:9, ECF No. 92.) At trial, Dugan testified that he knew Gill from 2001 to 2002, that he had numerous in-person meetings with Gill, and that the person in the photographs "looked strikingly like Raymond Gill." (*Id.* at 86:12–87:21, 90:20-24.)

On August 28, 2013, the day after the robbery, Gill placed a $5,000 down payment on a 2004 Saab from Uptown Diplomat Motors. (*Id.* at 74:8-11.) At trial, the dealership owner testified that Gill provided large bills and used his Maryland driver's license for identification. (*Id.* at 60:14-19, 69:19-23.) The Government introduced the records from the purchase, including Gill's signature and drivers' license, into evidence. (*Id.* at 64:16-19.) Maryland Vehicle Administration ("MVA") records were also introduced as evidence, including Gill's MVA photograph taken on May 16, 2013. (*Id.* at 133:2-4.) In his MVA photograph, Gill is depicted wearing the same plaid shirt worn during the robbery of the Wells Fargo Bank on August 27, 2013. (*Id.*)

On September 5, 2013, the Baltimore County Police Department obtained an arrest warrant for Gill and a search warrant for his residence. (*Id.* at 105:20-24.) On September 6, 2013, Gill was arrested near his home while driving the recently purchased Saab.

(*Id.* at 105:25–107:14.)  At the time of his arrest, Gill was wearing a large black watch that was similar to the watch worn by the bank robber and carrying a new phone and $80 in twenty-dollar bills.  (*Id.* at 107:18-22.)

At the time of his arrest, Gill lived in his sister's row house, which was also searched. (*Id.* at 114:6-15.)  There, law enforcement seized $140 in twenty-dollar bills from a shirt pocket in his room and a receipt for the cell phone Gill purchased for $102.51 in cash on August 30, 2013.  (*Id.* at 117:1-15, 122:8-12.)  Gill's sister, Vernessa Murphy, testified that he did not have a job.  (*Id.* at 225:11-13.)  She also identified her brother, Raymond Gill, as the person in the surveillance videos.  (*Id.* at 233:17-20.)

On October 6, 2013, Gill directed his sister to locate a "G Phone" that he had hidden in the basement of her home.  (*Id.* at 138:21-24, 236:20-22.)  He instructed her to call "Marvin," sell him the "G Phone," and to put the proceeds on his commissary account at the detention center.  (*Id.* at 246:11–249:24.)  When his sister did not understand his evasive language, Gill became frustrated and spelled out "G-U-N."  (*Id.* at 140:23–141:2.)  He also informed her that the gun was loaded with the wrong "joints," meaning bullets, but that it worked.  (*Id.*)  The call was admitted into evidence at trial and Gill's sister testified that she found the gun, sold it to "Marvin," and placed the proceeds on her brother's commissary account.  (*Id.* at 257:3-15.) She described the gun as an old, rusty, metal revolver that was heavy and stated that she believed the gun was real as it contained bullets.  (*Id.* at 239:4-23, 245:1-19.)

## II.    Petitioner's Sentencing and Post-Trial Developments.

At the time of his sentencing, this Court determined that Gill qualified as a career offender pursuant to Chapter 4 of the United States Sentencing Guidelines ("U.S.S.G."), based

on his prior criminal convictions[3] for bank robbery in 1981,[4] 1986,[5] and 2001.[6]  *See* U.S.S.G. §4; (Sentencing Tr. 50:11-21, ECF No. 89.)  The Court then sentenced Gill to 300 months imprisonment for the violation of 18 U.S.C. § 2113(a), (d), and (f) (Count One),[7] and 180 months imprisonment for the violation of 18 U.S.C. § 924(c) (Count Two),[8] for a total term of forty years (480 months) in the U.S. Bureau of Prisons, followed by a period of five years supervised release.  (J&C, ECF No. 70.)  This sentence was in accordance with the sentencing guidelines range of 360 months to life, based on an adjusted offense level of 34 and a criminal

[3]     Prior to the armed robbery of the Wells Fargo on August 27, 2013, Gill had served lengthy federal jail sentences for three prior series of bank robberies.  (Sentencing Tr. 58:21–61:12, ECF No. 89.)

[4]     In 1981, Gill was convicted of two bank robberies in federal court, one with a handgun, and was sentenced to twenty years of incarceration.  (Government's Sentencing Mem. 5, ECF No. 66.)

[5]     In 1985, Gill was paroled after serving just a few years of his twenty-year sentence.  (Sentencing Tr. 59:15-19, ECF No. 89.)  Soon thereafter, Gill escaped the Volunteers of America halfway house in Baltimore, committed armed robbery that same day, followed by a series of four bank robberies over the next two months.  (Government's Sentencing Mem. 5–6, ECF No. 66.)  In 1986, Gill was charged with all five robberies, some in state court, some in federal court, and some in both.  (*Id.* at 6–7.)  He was sentenced to a total of twenty-five years in federal court for two of the robberies and escape, and sentenced to twenty years in state court for armed robbery and use of a handgun during a crime of violence in two separate cases.  (*Id.* at 6–7.)

[6]     Following the 1986 conviction, Gill was released from prison on September 8, 2000.  (Government's Sentencing Mem. 7, ECF No. 66.)  Two months after, Gill began another spree of three armed bank robberies and one attempted armed bank robbery.  (*Id.* at 7–8.)  After his arrest, Gill pled guilty to robbery, but later moved to withdraw his plea, and the motion was denied and Judge Motz of this Court sentenced Gill to 151 months.  (*Id.* at 8.)  Gill was officially released on August 1, 2013.  (*Id.* at 8–9.)  The armed bank robbery in the instant case occurred twenty-six days after his release.  (Sentencing Tr. 35:25–36:4, ECF No. 89.)

[7]     A violation of 18 U.S.C. § 2113(a), (d), and (f) carries a statutory maximum sentence of twenty-five years (or 300 months) imprisonment.  *See* U.S.S.G. §2B3.  Pursuant to U.S.S.G. §2B3.1(a), the base level for this offense is twenty.  In Petitioner's case, the offense level was increased by two levels because the property of a financial institution was taken (*see* U.S.S.G. §2B3.1(b)(1)); by one level because the loss was more than $10,000 (*see* U.S.S.G.§2B3.1(b)(7)(B)); and by two levels because the defendant obstructed justice (*see* U.S.S.G. §3C1.19(1)).  Count 1 was further enhanced to a level of 34 based on finding that Petitioner was a career offender pursuant to U.S.S.G. §4B1.1, because (1) Gill was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) Gill has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

[8]     A violation of 18 U.S.C § 924(c) carries a statutory minimum sentence of seven years imprisonment, unless the defendant is a career offender, and a maximum penalty of life imprisonment.  *See* U.S.S.G. §2K2.4.  Here, because Petitioner was convicted with a violation of § 2113(a), (d), and (f) in addition to the § 924(c) conviction, and qualified as a career offender under U.S.S.G. §4B1.1(a), the applicable guideline range is the greater of (1) the guideline for Count 1, plus 84 months: 346 to 411 months; or (2) the guideline range determined using the table in §4B1.1(c)(3): 360 months to life.

7

history category of VI.  (Presentence Investigation R. & R. ("PSR"), ECF No. 64; Sentencing Tr. 61:13-19, ECF No. 89).

Following sentencing, Gill appealed his sentence, raising two issues: (1) whether his 18 U.S.C. § 924(c) conviction must be reversed because federal bank robbery is not a crime of violence in the wake of *Johnson v. United States*, 135 S. Ct. 2551 (2015); and (2) whether this Court erred in sentencing him as a career offender because armed bank robbery no longer constitutes a crime of violence after *Johnson. See Gill*, 667 F. App'x at 789.  Reviewing for plain error, the Fourth Circuit affirmed Gill's conviction and sentence in an unpublished per curiam opinion.  *Id.*  The Supreme Court denied Gill's petition for *certiorari* on December 12, 2016. *Gill v. United States*, 137 S. Ct. 599 (2016) (mem.).

Before the Fourth Circuit affirmed his conviction, Gill filed the pending Rule 35(a) Motion on March 18, 2015, followed by a Motion to Amend Rule 35(a) Motion on June 5, 2015.  (ECF Nos. 72, 95.)  Subsequently, on December 1, 2016, filed his § 2255 Motion (ECF No. 129), which was followed by fourteen amended motions (ECF Nos. 131, 137, 138, 143, 145, 147, 148, 151, 153, 154, 157, 165, 166, and 170).  Additionally, Gill filed three Motions for Bail Hearing (ECF Nos. 118, 142, and 178); a Motion for Relief for False Imprisonment (ECF No. 147); a Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156); a Writ of Mandamus (ECF No. 164); a Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208); a Motion to Appoint Counsel (ECF No. 213); two Motions to Modify Sentence (ECF Nos. 215, 222); and a Motion for Compassionate Release (ECF No. 216), as well as a supplemental letter submitted by Petitioner in support of his request (ECF No. 223).

## **STANDARD OF REVIEW**

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

It is well-settled that a § 2255 motion is not a means to circumvent a proper ruling on appeal. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). A § 2255 motion does not enable the defendant to "recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, as a general rule, "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, an exception to this rule applies where a petitioner demonstrates both "cause" and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a

9

petitioner satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 688–89. Actions that fall below an objective standard of reasonableness are "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The second, or "prejudice," prong requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* In order to establish this level of prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient. Rather, a petitioner must meet both prongs of the Strickland test in order to be entitled to relief. *See id.* at 687.

## ANALYSIS

This Court first addresses Gill's § 2255 Motion before discussing his Motion for Compassionate Release as well as the variety of other motions filed by the *pro se* Petitioner attacking this Court's sentence and previous orders in this matter.

10

## I.     Section 2255 Motion.

Gill appears to advance fourteen arguments in support of his § 2255 Motion.[9]  The arguments are as follows:

1. Petitioner argues that his counsel was constitutionally ineffective for several reasons, such as: (a) failure to challenge law enforcement's search of his person and car; (b) failure to advise the Petitioner of a plea offer; (c) failure to challenge the victim's identification of Petitioner; (d) failure to raise a violation of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174; (e) failure to challenge evidence of the use of a firearm under 18 U.S.C. § 924(c); (f) failure to object to Petitioner's career offender status at sentencing; (g) status of Special Assistant U.S. Attorney who represented the Government during pretrial motions litigation; and (e) failure to investigate the Petitioner's claim that a witness identifying himself as a Supervisory Special Agent of the FBI gave "prejudicial testimony";

2. Petitioner asserts that he should not have been a career offender for sentencing purposes;

3. Petitioner argues that his sentence was improper based on *Dean v. United States*, 556 U.S. 568 (2009);

4. Petitioner asserts that he suffered an improper "double indictment" in state and federal courts;

5. Petitioner claims that his indictment was a Double Jeopardy violation;

6. Petitioner alleges a violation of his right to be present at every stage of trial;

7. Petitioner alleges that several witnesses perjured themselves;

8. Petitioner claims that the jury was improperly instructed that the Government need not prove an element of bank robbery;

9. Petitioner alleges a violation of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174;

10. Petitioner accuses investigators of unconstitutionally using a tracking device;

---

[9]     This Court considers the arguments set forth in Petitioner's § 2255 Motion (ECF No. 129, with ECF No. 141 as a duplicate of the original motion) and his subsequent amendments (ECF Nos. 131, 137, 138, 143, 145, 147, 148, 151, 153, 154, 157, 165, 166, and 170).

11. Petitioner asserts that there was insufficient evidence that he actually brandished a firearm under 18 U.S.C. § 924(c);

12. Petitioner claims that there was a lack of foundation for DNA evidence;

13. Petitioner alleges violations of the Jencks Act, 18 U.S.C. § 3500; and

14. Petitioner argues that his indictment was "defective" and "forged."

As explained in detail below, this Court concludes that Gill's § 2255 arguments are wholly without merit. The majority of Gill's claims are procedurally barred because they were addressed on appeal. The claims which Gill failed to raise on appeal are likewise barred because he has failed to show cause and prejudice. Finally, while Gill may assert ineffective assistance of counsel claims for the first time on collateral review, these claims fail because he has failed to show that his counsel was deficient under the *Strickland* standard.

### A. Procedurally Barred Claims.

As noted above, it is well-settled that a § 2255 motion is not a vehicle to circumvent a proper ruling on appeal, *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), and a defendant will not "be allowed to recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (citing *Herman v. United States*, 227 F.2d 332 (4th Cir. 1955)).

Additionally, if a defendant waives an issue by failing to raise it on direct appeal and then later attempts to raise it as a collateral attack, that motion is procedurally barred. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). An exception to this rule applies where a petitioner demonstrates both "cause" and "actual prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 443 U.S. 72, 87 (1977), or where a petitioner can demonstrate that he is "actually innocent." *United States v.*

*Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393, (2004); *Reed v. Farley*, 512 U.S. 339, (1994); *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999). Also, "questions of sufficiency of evidence are not reviewable in a § 2255 proceeding." *Epps v. United States*, 728 F. Supp. 1236, 1239 (D. Md. 1990) *aff'd sub nom.* Gill's procedurally barred claims are discussed in turn below.

1. **Issues Raised on Appeal.**

On appeal, Gill asserted that armed bank robbery under § 2113(d) did not qualify as a "crime of violence" under § 924(c)(3)(A), claiming it lacked an element of violent physical force as defined by the Fourth Circuit in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012). *See Gill*, 667 F. App'x at 789. Based on this premise, his counsel raised two issues: whether his § 924(c) conviction must be reversed because federal bank robbery is not a crime of violence in the wake of *Johnson v. United States*, 135 S. Ct. 2551 (2015); and (2) whether the district court erred in sentencing him as a career offender because armed bank robbery no longer constitutes a crime of violence after *Johnson.* *Id.* The Fourth Circuit rejected this challenge, finding that both issues failed under *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) (holding that taking by intimidation under § 2113(a) involves the threat to use physical force and thus armed bank robbery is a crime of violence pursuant to 18 U.S.C. § 924(c)(3)(A)).

Here, in his § 2255 Motions, Gill again alleges that he was improperly sentenced as a career offender. (ECF Nos. 129, 143, 153, 166.) The purpose and intent of § 2255 is to provide remedies for injustice. It is not a secondary mechanism in which a petitioner can file successive and repetitious claims on matters raised on direct appeal. *See Withrow v. Williams*, 507 U.S. 680, 720–21 (1993) (Scalia, J., concurring); *United States v. Walker*, 299 F. App'x 273,

276 (4th Cir. 2008) ("Absent a change in the law, a prisoner cannot relitigate in collateral proceedings an issue rejected on direct appeal."); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues."); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1975) (per curiam) (stating that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered [on direct appeal]").  Because Gill argued and lost this issue on appeal, he may not collaterally attack the same issue in the pending § 2255 Motion. Accordingly, Gill's successive and repetitious claims on matters raised on direct appeal are procedurally barred and require no extended discussion.  To the extent he has attacked his sentencing on bases not raised on appeal, those arguments are procedurally barred pursuant to *Bousley*, as addressed in detail below.  523 U.S. at 621–22.

### 2. Issues Petitioner Failed to Raise on Appeal.

In addition to his various claims of ineffective assistance of counsel discussed below, Gill also alleges a variety of new claims that were not raised on appeal in his § 2255 motions, such as: improper sentencing based on *Dean v. United States*, 556 U.S. 568 (2009);[10] an improper

---

[10]    In ECF No. 170, Petitioner appears to argue that he is entitled to new sentencing under *Dean*.  556 U.S. 568 (2009).  In *Dean*, the Supreme Court held that 18 U.S.C. § 924(c) does not prevent a sentencing court from considering a mandatory minimum imposed under that provision when calculating an appropriate sentence.  *Id.* at 571–72.  While *Dean* stands for the proposition that a sentencing court *may* consider the mandatory minimum, such an approach is not required, as the sentencing court may use its discretion when calculating an appropriate sentence for a felony serving as the basis for a conviction under § 924(c).  *Id.*  Thus, Petitioner's sentence was consistent with *Dean*, as this Court was fully aware of the sentencing options, but in light of Gill's criminal history, sentenced him to forty years, as was in its power and discretion.

"double indictment" in state and federal courts;[11] a Double Jeopardy violation;[12] a violation

of his right to be present at every stage of trial;[13] perjury by multiple witnesses;[14] improper jury

instruction;[15] a Speedy Trial Act violation; unconstitutional use of a tracking device;[16]

insufficient evidence of 18 U.S.C. § 924(c); lack of foundation for DNA evidence; violations

of the Jencks Act, 18 U.S.C. § 3500; and "defective" and "forged" indictment.

      Gill did not raise any of these vague and conclusory challenges to his sentencing and

---

[11]    In ECF No. 151, Petitioner, without support, alleges that his indictment was improper because both the federal and state government indicted him for the same crime. First, all charges in state court were dismissed after the defendant was indicted in the instant case. Additionally, the Supreme Court has long held that double jeopardy does not apply between state and federal convictions under the "dual-sovereignty" doctrine. *See Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) (declining to overturn the longstanding dual-sovereignty doctrine, which provides that a crime under one sovereign's laws is not the same offense as a crime under the laws of another sovereign); *United States v. Abbate*, 359 U.S. 187, 194 (1959) (affirming that a "federal prosecution is not barred by a prior state prosecution of the same person for the same acts").

[12]    In his original § 2255 Motion, Petitioner asserted a double jeopardy violation based on his belief that brandishing a weapon while committing a violent crime under 18 U.S.C. § 924(c) is a lesser included offense of armed bank robbery under 18 U.S.C. § 2113. In *United States v. Johnson*, 32 F.3d 82 (4th Cir. 1994), the Fourth Circuit held that, even where the elements of armed carjacking—a crime of violence—overlap with the elements of § 924(c), convicting a defendant on both counts does not violate double jeopardy because Congress clearly intended to add a consecutive term of imprisonment to "any crime of violence in which a firearm was used or carried." *Id.* at 85.

[13]    The Petitioner claims that his right to be present at every stage of trial was violated when he was not informed of the contents of a note the jury sent to this Court during the trial. (ECF No. 129); *see* Fed. R. Crim. P. 43(a) ("Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury empanelment and the return of the verdict; and (3) sentencing."). The record reflects that the jury sent two notes during deliberations: the first asked to view the surveillance video of the robbery and hear the jail call between Gill and his sister, and the second specified how much of the video they wanted to see. (Dec. 11, 2014 Trial Tr. 2:14-15, 12:19-22, ECF No. 93.) While the record shows that the undersigned Judge Richard D. Bennett and attorneys had a brief discussion on the first note while Gill was being transported from lockup, (*id.* at 3:10-12), the substance of that discussion was repeated once Gill entered the courtroom. *Id.* at 3:15-20.

[14]    In ECF No. 157, Petitioner claims, without any support, that the teller, Supervisory Special Agent Dugan, and Petitioner's sister all committed perjury when they identified him in this Court. This claim is not supported by any evidence and has no basis in fact.

[15]    In ECF No. 154, Petitioner falsely asserts that this Court instructed the jury that the victim bank was federally insured. Contrary to this assertion, the jury was properly instructed, and Petitioner did not object to the instruction at trial or on appeal. Furthermore, this element was clearly established at trial.

[16]    In ECF No. 129, Petitioner alleges for the first time, and without support, that law enforcement used "stingray" GPS devices to track his car. In making this claim, Gill points to no discovery, testimony, or any other basis for this claim. There is no reason to believe this occurred, and even if a device were used to locate Gill, this claim is procedurally barred.

this Court's proceedings on appeal.  Where a petitioner has procedurally defaulted a claim by failing to raise it on appeal, the claim may be raised on collateral review only if the defendant can first demonstrate "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that he is "actually innocent," *Murray*, 477 U.S. at 496; *Smith v. Murray*, 477 U.S. 527, 537 (1986).  Here, Gill offers little to support his bald allegations.  Moreover, he fails to demonstrate cause and actual prejudice, or actual innocence, in raising challenges to his sentencing and this Court's proceeding that were not raised on appeal.  Such challenges are procedurally barred, and no extended discussion is necessary based on a lack of merit.

### B.  Claims of Ineffective Assistance of Counsel.

A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition.  *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991).  As noted, to successfully challenge a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment Claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  First, the petitioner must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," and was "below an objective standard of reasonableness," measured by "prevailing professional norms."  *Id.*  "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).

16

Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 697; see *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable").  A court may determine whether prejudice has been shown before judging counsel's conduct for deficiencies.  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."  *Strickland*, 466 U.S. at 670.

Here, Gill is not entitled to habeas relief based on ineffective assistance of counsel claims made against either his first[17] or second attorney.[18]  His claims, many of which are plainly contradicted by a review of the record, cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).  Put another way, Gill is unable to demonstrate that his counsel's performance was deficient, and he has failed to show prejudice.

### 1.  Failure to challenge law enforcement's search of his person and car.

In his original § 2255 Motion, Gill contends that law enforcement made "an illegal

---

[17]    Gill's "first attorney," who represented Petitioner at the April 22, 2014 pretrial motions hearing before Judge Russell, passed away prior to trial.

[18]    After the death of his first attorney, Gill was represented by his "second attorney" beginning August 5, 2014.  (ECF No. 31.)  Gill's second attorney represented him at trial and on appeal.

warrantless search, and seizure" when they stopped him and searched both his person and his car and used some of that evidence at trial. (ECF No. 129.) Further, Gill claims that his trial counsel's performance was deficient for failing to challenge this alleged violation of his Fourth Amendment rights. (*See id.*) This allegation is contradicted by a review of the record. (*See* ECF Nos. 10, 16.) On March 25, 2014, Gill's first attorney filed an Amended Motion to Suppress Tangible and Derivative Evidence, which alleged that evidence was seized from Gill's vehicle without a valid search warrant and without probable cause. (ECF No. 16.) At a pretrial motions hearing, Judge Russell denied the motion to suppress tangible evidence from the Petitioner, the Petitioner's residence, and the Petitioner's car, finding that the affidavit in support of the arrest and search warrants "established overwhelming probable cause to search and seize items." (Apr. 22, 2014 Mot. Hr'g Tr. 18:12–19:9, ECF No. 88.)

Furthermore, the search of Gill's vehicle was lawful under the test articulated in *Arizona v. Gant*, 556 U.S. 332 (2009). Under *Arizona*, law enforcement "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. Here, Gill was arrested while driving the searched vehicle and the officers clearly had reason to believe that they would find evidence of the armed robbery, such as the weapon, money stolen from the bank, or other items purchased with the stolen money, in the suspect's car days after the robbery. (Apr. 22, 2014 Mot. Hr'g Tr. 7:5-7, ECF No. 88.)

To be sure, even if the evidence from Gill's vehicle was improperly admitted, Gill still has not satisfied the prejudice prong of the *Strickland* test, as he has not demonstrated a

reasonable probability that, had his motion to suppress been granted, the result of his case would have been different. *See Strickland*, 466 U.S. at 694. In light of the overwhelming evidence against Gill, he cannot show that he would have been acquitted but for the evidence seized from his person, which included $80 in $20 bills, a black watch, a cell phone, and his driver's license, or from his car, which included vehicle records, a bill of sale and registration for the vehicle, and an address book containing his sister's and "Marvin's" names and numbers. (Dec. 9, 2014 Trial Tr. 107:18-22, ECF No. 92.) The surveillance video, the DNA, the testimony of the bank employees and his sister, as well as other persuasive evidence, would have been presented to the jury. Thus, over and beyond the fact that this allegation is contradicted by the record, Gill has failed to show prejudice. Therefore, this claim must be denied. *Strickland*, 466 U.S. at 694.

## 2. Failure to advise the defendant of a plea offer.

Next, Gill claims that the Government made a formal plea offer of twenty years, but his first attorney, who passed away prior to trial, advised him against accepting the plea offer. (ECF No. 129.) Gill claims that his first attorney told him he could "hang [the] jury due to identification." (*Id.*) In another filing, Gill alleges that at the pretrial motions hearing before Judge Russell on April 22, 2014,[19] his first attorney[20] "told [him] to remain silent, while he and [the] U.S. Attorney conspired together and violated the original plea-deal" when Judge Russell asked if there was a plea deal offer. (ECF No. 165.) The record, however, indicates that the

---

[19]    In his motion, Petitioner claims the following motion hearing took place on December 12, 2014. For clarity, this date has been corrected to April 22, 2014, the date of the motion hearing before Judge Russell. (Apr. 22, 2014 Mot. Hr'g. Tr., ECF No. 88.)

[20]    In his motion, Petitioner notes his second attorney represented him at the hearing at issue. The record indicates that his first attorney, who later passed away, represented him at the April 22, 2014 motion hearing before Judge Russell. *Id.* For clarity, this mention of counsel has been corrected accordingly.

Government informed Judge Russell that "[t]here haven't been any formal offers made, no written or approved offers by the U.S. Attorney's office."   (Apr. 22, 2014 Mot. Hr'g Tr. 70:12-18, ECF No. 88.)   Gill's counsel noted in light of the Petitioner's age, criminal history, and the charges he was facing "there's no reason to resolve it without a trial."   (*Id.* at 70:19–71:1.)   There is no evidence that formal plea offers were made in this case.

Moreover, "[i]n the context of pleas," a petitioner can make a claim for an ineffective assistance if he can "show that there is a reasonable probability" that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).   Beyond the fact that no evidence exists to support Gill's assertion that a plea offer was made and that his counsel advised him against accepting, the Government points out that the Petitioner's words on record indicate that he would not have accepted a plea deal. (Government's Opp'n Pet'r's § 2255 Mot. 13, ECF No. 179.)   Gill's desire to go to trial is evidenced by the letter he wrote to Judge Russell on July·22, 2014, more than three months after the aforementioned motions hearing.   (ECF No. 30.)   Gill wrote that "[a] plea deal is all [the defense attorneys] want to offer" and "[i]t is his intention to go to jury trial."   (*Id.* at 4.) Furthermore, Gill showed no remorse at his sentencing hearing, blamed his drug addiction, blamed the judicial system, and stated that he had not committed "half" of his former offenses. (Sentencing Tr. 72:24–79:7, ECF No. 89.)   In light of the fact that no formal plea offers were made to Gill, and there exists no evidence to the contrary, Petitioner's claim that his counsel failed to advise him of a plea offer fails, for both a lack of factual support and lack of prejudice.

**3.   Failure to challenge the victim's identification of Petitioner.**

Gill also contends that his trial counsel was ineffective for failing to challenge the

testimony of the victim teller's in-court identification of Gill. (ECF No. 129.) This argument is also contradicted by the record. On cross-examination, trial counsel thoroughly questioned the victim teller about how much time she had to observe the suspect at the time of the robbery, her confidence in her ability to identify the suspect, and discrepancies between her initial description of the suspect's age and Gill's actual age. (Dec. 8, 2014 Trial Tr. 80:7–84:17, ECF No. 96.) In his closing argument, counsel urged the jury to find that the victim teller's identification of the defendant was not reliable. (Dec. 10, 2014 Trial Tr. 100:7–102:2, ECF No. 97.)

Furthermore, this Court seriously considered whether the bank teller's in-court identification of Gill was permissible. During recross-examination, the victim teller testified that she observed the bank surveillance video during trial preparation and the video had been paused at times. (Dec. 8, 2014 Trial Tr. 93:9-10, ECF No. 96.) Counsel moved for a mistrial relating to the victim teller's identification testimony, arguing that allowing the witness to view paused images of the robber was "the same as doing an out-of-court extrajudicial identification and was tantamount to an unduly suggestive photo spread." (*Id.* at 93:16-24.)

In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court held that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on the ground of misidentification only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Id.* at 383–84*; see also United States v. Saunders*, 501 F.3d 384 (4th Cir. 2007), *cert. denied*, 552 U.S. 1157 (2008) (holding that a key witness's identification of the defendant was reliable, even though the police showed the witness a photo

21

array that was impermissibly suggestive (citing *Simmons*, 390 U.S. at 383–84)); *United States v. Morsley*, 64 F.3d 907 (4th Cir. 1995) (holding that a witness's identification of a defendant was not tainted by an inadmissible out-of-court identification as the witness's previous dealings with the defendant were sufficient to establish an independent basis for witness's identification).  In accordance with precedent, this Court found that the slowing down of the video did not amount to a photo spread, thus there was no unduly suggestive pretrial procedures and that the witness's identification was reliable.  (Dec. 8, 2014 Trial Tr. 103:18-22, ECF No. 96.)  Here, the foregoing makes clear that, contrary to Gill's assertion, his counsel raised and pursued the issue and this Court seriously considered it.  As such, Gill's challenges with respect to the victim's identification may not be considered deficient performance under *Strickland.*  466 U.S. at 687–88.

### 4.   Failure to raise a violation of the Speedy Trial Act.

Gill next alleges that defense counsel was ineffective for failing to object to a violation of his right to a speedy trial under the Sixth Amendment and under the Speedy Trial Act. (ECF No. 129); *See also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); 18 U.S.C. §§ 3161–3174 (establishing the time limits for completing various stages of a federal criminal prosecution).  While Gill is technically correct that his counsel did not raise an objection under the Speedy Trial Act, Petitioner raised the issue *pro se* and this Court denied the motion at his sentencing hearing. (Sentencing Tr. 19:5-11, 25:17-19, ECF No. 89.)  As this Court explained at his sentencing hearing, while the Speedy Trial Act provides for a trial within seventy days of an indictment or initial appearance, whichever date last occurs, 18 U.S.C. § 3161(c)(1), it also allows for delays

that count as excludable time, including delays while motions are pending and any time the Court chooses to exclude "if the ends of justice are served and outweigh the best interest of the public." *See* 18 U.S.C § 3161(h).

Here, Gill was indicted on October 23, 2013, made his initial appearance on December 13, 2013, and filed his first series of motions on January 2, 2014. (ECF Nos. 4, 9, 10, 11.)  The death of Gill's first attorney, as well as the pretrial motions that his counsel filed that remained pending until nineteen days before trial qualified as excludable time. *See* 18 U.S.C. § 3161(h).  Combining the twenty days between his initial appearance and the filing of his first series of motions, with the nineteen days between the final motions hearing and trial, there were less than forty non-excusable days from initial appearance through beginning of trial.  As noted at his sentencing hearing, Gill's request to postpone the motions hearing before Judge Russell is the primary reason the motions remained pending for such a length of time. (Sentencing Tr. 24:1–26:5, ECF No. 89.)  As such, the defendant's claim of ineffective counsel with respect to failure to raise a speedy trial violation is meritless both for lack of factual support and lack of prejudice.

5. **Failure to challenge evidence of the use of a firearm under § 924(c).**

Gill also claims counsel was ineffective for failing to challenge Petitioner's use of a firearm during the bank robbery under 18 U.S.C. § 924(c). (ECF No. 170.)  Essentially, Gill claims that his attorney failed to argue that the gun used during the robbery was not a "real" firearm as it could have possibly been a "toy."  (*Id.*)  Again, contrary to Gill's claim in his § 2255 filings, his counsel attacked the § 924(c) count multiple times at trial.  In his opening statement, counsel emphasized that investigators never found a gun.  (Dec. 8, 2014 Trial Tr.

35:8-13, ECF No. 96.)  During cross-examination of the victim teller, counsel established that "replica firearms" exist and that the suspect never opened the chamber of the firearm or pulled the trigger.  (*Id.* at 85:1–87:9.)  In his closing argument, his counsel stated that the victim teller was "not 100 percent sure" the gun was real.  (Dec. 10, 2014 Trial Tr. 101:20-22, ECF No. 97.)

Furthermore, Gill's sister testified that her brother directed her to find his gun, which he said worked and was loaded, and that she sold it to his friend "Marvin."  (Dec. 9, 2014 Trial Tr. 246:8-21, ECF No. 92.)  She further testified that the gun was metal, rusty, and heavy, and that she thought it was real.  (*Id.* at 239:5-23, 245:1-19.)  Thus, contrary to Gill's allegations, his counsel did try to cast doubt on the weapon used in the robbery but could not overcome the overwhelming evidence that Gill used a real firearm in pursuance of the bank robbery.  As such, counsel's performance was not deficient, and this claim is denied for both lack of factual support and lack of prejudice.

6. **Failure to object to Petitioner's career offender status at sentencing.**

Gill also claims that his counsel was ineffective with respect to his being sentenced as a career offender.  (ECF Nos. 129, 137, 143, 153, 156, 166.)  Gill appears to argue that his counsel failed to object to the inclusion of his prior convictions, the basis for this objection being that this Court's sentence was not imposed within fifteen years of his commencement of the 1986 conviction and that the inclusion of any conviction that occurred prior to the enactment of the Sentencing Guidelines in 1987 constitutes ex post facto application.  (*Id.*) Here, Gill fails to meet either prong of the *Strickland* test.

First, at sentencing, Gill's counsel did object to the PSR's determination that Petitioner

was a career offender on both grounds Gill attempts to relitigate in his § 2255 Motion. (Sentencing Tr. 57:5-14, ECF No. 89.)  Furthermore, even if counsel had not objected, Gill fails the prejudice prong because he was properly sentenced as a career offender pursuant to the United States Sentencing Guidelines.  *See* U.S.S.G. §4A1.2(e).  The U.S.S.G. state the following:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e).  The Guidelines further require that a career offender have "at least two prior felony convictions" of a crime of violence or a controlled substance offense.  *See* U.S.S.G §4B1.1.  Gill committed the instant offense on August 27, 2013.  Gill was convicted in 1985 for a crime of violence, armed bank robbery, and was not released from incarceration until September 8, 2000.  (PSR 11, ECF No. 64.)  Gill was also convicted for armed bank robbery in 2001 and began supervised release on August 2, 2013.  (*Id.* at 12.)  Thus, Gill was incarcerated for both of these convictions within fifteen years of the instant offense.  Finally, Gill's classification as a criminal offender was affirmed by the Fourth Circuit. *See Gill*, 667 F. App'x at 789.

With respect to this claim, the record clearly shows that counsel's performance was in no way deficient and it has properly been settled that Gill was a career offender pursuant to the Sentencing Guidelines.  Therefore, Gill fails both prongs of the *Strickland* test.  466 U.S. at 687–88.

### 7.   Other claims of ineffective assistance.

Gill advances a variety of other allegations of conduct that he characterizes as exemplars of his counsel's ineffective assistance.  The Government asserts that the Petitioner's "bare-bone allegations and statements" are "at best conclusory and at worst clearly contradicted by the record."  (Government's Opp'n Pet'r's § 2255 Mot. 10, ECF No. 179.)  For example, without any support, Gill alleges that he was incompetent to stand trial and his counsel was ineffective for failing to raise the issue of competency and longstanding drug abuse (ECF No. 139); he challenges his counsel as ineffective for failing to raise a Jencks Act Violation[21] (ECF No. 129); for failing to adequately prepare and investigate (ECF No. 165); for failing to investigate the status of one of the Government's attorneys[22] (ECF No. 129); and for failure to investigate the Petitioner's claim that a witness identifying himself as a Supervisory Special Agent of the FBI gave "prejudicial testimony."[23]  Gill fails to provide any support for these arguments or adequately explain the nature of his claims.  Moreover, he fails to articulate how any rise to the level of legal error, much less actual prejudice.

---

[21]     The Jencks Act, 18 U.S.C. § 3500, codifies the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657 (1957), which held that a criminal defendant has a constitutional right to inspect prior statements made to government agents by government witnesses.

[22]     The Petitioner has repeatedly claimed that the Special Assistant United States Attorney, who was co-counsel at the motions hearing, was an "inactive" status in Maryland District Court.  According to the Petitioner, his attorney was ineffective for failing to investigate his opposing counsel's bar status, and had he done so, the case would be "void."  (ECF No. 129.)  Attorneys who represent the United States do not need to be members of the federal bar of the District of Maryland.  *See* Local Rule 101.1(b) (D. Md. 2018).  In its response to Petitioner's § 2255 Motion, the Government noted that "[a]ccording to the clerk's office, the attorney's status has been listed as inactive since she left the U.S. Attorney's Office on May 23, 2014, after she appeared for the government in this case."  (Government's Opp'n Pet'r's § 2255 Mot. 18 n.7, ECF No. 179.)  Accordingly, Petitioner's claims lacks merit.

[23]     Gill claims that his trial counsel was ineffective in failing to investigate the Petitioner's claim that Supervisory Special Agent Patrick Dugan was interviewed on WJZ-TV several times prior to and during Petitioner's trial.  (ECF No. 129.)  According to Gill, the jury must have known that Supervisory Special Agent Dugan was an FBI agent because of his television appearances, making his testimony "prejudicial" as it improperly conveyed Gill's criminal history to the jury.  (*Id.* at 21–22.)

## II.     Motion for Compassionate Release.

Also pending is Petitioner's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 216).  On May 21, 2020, the Office of the Federal Public Defender for the District of Maryland informed this Court that it will not be supplementing Gill's *pro se* Motion for Compassionate Release.  (ECF No. 221.)  Upon receiving notice of this, Gill submitted a supplemental letter to this Court in support of his request on June 8, 2020.  (ECF No. 223.)  According to the representations made in these letters, Gill seeks compassionate release from United States Penitentiary ("USP") Hazleton, where one staff member has tested positive for COVID-19.[24]  At sixty-four years of age,[25] he has preexisting conditions which potentially render him more susceptible to the illness, namely: hypertension and prostate complications.  (ECF Nos. 216, 223.)

A prisoner may request a reduction in sentence to time served—sometimes called compassionate release—for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Before the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court.  With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence.  The Act permits a defendant to seek a sentence reduction after he "has fully

---

[24]     *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp.

[25]     In ECF Nos. 216 and 223, Gill states he is 65 years of age.  The record indicates that Petitioner's birthdate is November 20, 1955.  His age has been corrected accordingly.  (*See* ECF No. 2.)

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). As Judge Blake of this Court has recognized, the First Step Act authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020).

Gill appears to have exhausted his administrative remedies. On May 6, 2020, Gill sent his request for compassionate release to the warden of USP Hazelton. (ECF No. 221.) While his original Motion for Compassionate Release, filed April 20, 2020, predated his request to the warden, Gill filed a supplemental letter on June 8, 2020, after the thirty-day waiting period expired. (ECF Nos. 216, 223.)

Nevertheless, Gill has not presented "extraordinary and compelling reasons" for his release. The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected

to recover." U.S.S.G. §1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less" presents extraordinary and compelling reasons to release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Sentencing Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. *Id.* § 1B1.13 cmt. n.1(D).

Here, Gill has not submitted any evidence to show that he is particularly susceptible to COVID-19 or that he has been exposed to COVID-19. Gill does not make any particular complaints about the efforts taken at USP Hazleton to combat the illness. While Gill indicates that he is sixty-four years old and suffers from hypertension and prostate complication (ECF Nos. 216, 223), these findings alone do not present "extraordinary and compelling" reasons for release.

Additionally, the 18 U.S.C. § 3553(a) factors do not warrant compassionate release at this stage. Among these factors, the Court is bound to consider (1) Gill's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Bryant*, 2020 WL 2085471 at *4.

Gill's personal characteristics do not weigh in favor of a reduction in sentence to time

served.   Gill is a career offender who is prone to recidivism, having committed several robberies within months of his release from prior terms of incarceration. (*See* Government's Sentencing Mem. 7, ECF No. 66.)   Reducing Gill's sentence to time served would effectively result in less than a seven-year sentence, far below the applicable Guidelines range.  (*See* PSR, ECF No. 64.)   Such a short sentence would not adequately reflect the seriousness of the offense or afford adequate deterrence.

### III.    Additional Motions.

In addition to the § 2255 Motions and Motion for Compassionate Release, Gill has filed a variety of other motions attacking this Court's sentence and previous orders in this matter, including Petitioner's Rule 35(a) Motion (ECF No. 72) and a Motion to Amend the Rule 35(a) Motion (ECF No. 95); three Motions for Bail Hearing (ECF Nos. 118, 142, and 178); a Motion for Relief for False Imprisonment (ECF No. 147); a Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156); a Writ of Mandamus (ECF No. 164); a Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208); a Motion to Appoint Counsel (ECF No. 213); and two Motions to Modify Sentence (ECF Nos. 215, 222).

The claims presented in Petitioner's three Motions for Bail Hearing (ECF Nos. 118, 142, and 178), Motion for Relief for False Imprisonment (ECF No. 147), Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156), Writ of Mandamus (ECF No. 164), Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208), Motion to Appoint Counsel (ECF No. 213), and two Motions to Modify Sentence (ECF Nos. 215, 222)[26] are

---

[26]    In his two Motions to Modify Sentence (ECF Nos. 215, 222), Petitioner (1) claims that including his 1985 conviction in determining his career offender status was a violation of the ex post facto clause under Article 1, § 9 of the United States Constitution, and (2) asserts that his § 924(c) conviction is unlawful as a result of *Johnson v. United States*, 135 S. Ct. 2551 (2015).  These claims are wholly lacking in merit.  First, the ex post

based on the same failed arguments detailed above.  Consequently, Petitioner's three Motions

for Bail Hearing (ECF Nos. 118, 142, and 178) are DENIED;  Motion for Relief for False

Imprisonment (ECF No. 147) is DENIED; Motion to Correct Illegal Sentence pursuant to

Rule 35(c) (ECF No. 156) is DENIED; Writ of Mandamus (ECF No. 164) is DENIED;[27]

Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208) is DENIED; Motion

to Appoint Counsel (ECF No. 213) is DENIED; and two Motions to Modify Sentence (ECF

Nos. 215, 222) are DENIED.

Petitioner presents additional, but familiar, challenges to his sentencing in a Rule 35(a)

Motion (ECF No. 72) and a Motion to Amend the Rule 35(a) Motion (ECF No. 95).  In his

Rule 35(a) Motion (ECF No. 72) and Motion to Amend the Rule 35(a) Motion (ECF No. 95),

Petitioner again challenges his sentencing as a career offender pursuant to U.S.S.G §4.  Rule

35(a) of the Federal Rules of Criminal Procedure authorizes reconsideration and correction of

a sentence only to correct an "arithmetical, technical, or other clear error."  *See United States v.*

*Brown*, 381 F. App'x 261, 263 (4th Cir. 2010) (citing *United States v. Goodwyn*, 596 F.3d 233, 235

(4th Cir. 2010)).  As discussed in detail in this Memorandum, this Court properly determined

that Gill was a career offender.  Furthermore, the Fourth Circuit, reviewing for clear error,

affirmed Petitioner's sentencing and conviction on direct appeal.  *Gill*, 667 F. App'x at 789.

Therefore, Petitioner's Rule 35(a) Motion (ECF No. 72) and Motion to Amend (ECF No. 95)

---

facto argument was raised by his counsel at sentencing, who conceded there was no supporting case law. (Sentencing Tr. 57:5-14, ECF No. 89.)  Nevertheless, this argument was considered at length by this Court, and it was considered and affirmed by the Fourth Circuit on direct appeal.  *Gill*, 667 F. App'x at 789.  Furthermore, his arguments concerning the constitutionality of his § 924(c) conviction was raised on direct appeal and rejected by the Fourth Circuit.  *Id.*

[27]     Gill's petition for a Writ of Mandamus is more appropriately filed with the United States Court of Appeals for the Fourth Circuit.

are DENIED.

## **CONCLUSION**

For the foregoing reasons, the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 129), along with the fourteen amended filings (ECF Nos. 131, 137, 138, 143, 145, 147, 148, 151, 153, 154, 157, 165, 166, and 170) are DENIED; Rule 35(a) Motion (ECF No. 72) and Motion to Amend the Rule 35(a) Motion (ECF No. 95) are DENIED; three Motions for Bail Hearing (ECF Nos. 118, 142, and 178) are DENIED; Motion for Relief for False Imprisonment (ECF No. 147) is DENIED ; Motion to Correct Illegal Sentence pursuant to Rule 35(c) (ECF No. 156) is DENIED; Writ of Mandamus (ECF No. 164) is DENIED; Motion for Temporary or Preliminary Injunctive Relief (ECF No. 208) is DENIED; Motion to Appoint Counsel (ECF No. 213) is DENIED; two Motions to Modify Sentence (ECF Nos. 215, 222) are DENIED; and Motion for Compassionate Release (ECF No. 216) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant.  *See Jackson v. United States*, Civ. No. PJM-12-421, 2012 WL 869080, *1 (D. Md. Mar. 13, 2012). "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's  assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)).  Reasonable jurists would not find Gill's claims debatable.  Because Gill's motion provides no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

A separate Order follows.

Dated: June 12, 2020

_____/s/_____

Richard D. Bennett
United States District Judge